Day, J.
This case comes before us on a motion for leave to file a petition in error. The record is voluminous, containing over seven hundred manuscript pages; and the errors assigned are numerous. But all the questions of importance are reducible to a few general propositions, which may be sufficiently presented by a comparatively brief statement of the ease.
On the 16th day of July, 1850, Henry L. Brown and others, by deed of indenture, leased certain lots in the city of Dayton to the Dayton Hotel Company and its assigns, for the term of ninety-nine years from the 5th day of September, 1850, renewable forever. The company, on its behalf and its assigns, agreed to pay therefor one thousand dollars a year, rent, for the next twenty years.
It was covenanted in the indenture that, at the expiration of that period, the “ground” thus leased should be revalued,” by three disinterested men, to be selected as follows: one by Brown, his heirs or assigns; one by the company or its assigns; and the third by the two thus chosen. It is further stipulated that “these three persons thus choseu and appointed shall proceed to view the ground named in this indenture, and appraise the same at its true value,” and “report in writing their valuation or appraisement to the parties.” The company covenanted, for itself and its assigns, to pay, as rent, to the lessors, their heirs or assigns, *465 during a second term of twenty years, an amount annually equal to eight per cent, on “the amount of the appraised value ” of the premises reported by the appraisers.
It was also stipulated in the indenture that, at the end’ of each successive period of twenty years, the “ground”' should be “ revalued” in like manner, and that rent should, be paid equal to eight per cent, annually on the amount of such “ revaluation or appraisement.”
A hotel was erected on the demised premises, and tliewhole is now owned by Peter P. Lowe as the assignee of the Dayton Hotel Company.
At the expiration of the first term of twenty years, in* 1870, appraisers were selected as provided by the lease. Two of them made a written report of their appraisement, at $25,000; but the other appraiser refused to agree to or sign the report.
Brown, claiming the appraisement and report to be of no validity, proposed the selection of three other appraisers* as provided in the indenture; but Lowe, insisting that the-report of the two appraisers was valid and binding, refused to do anything further than to ratify the report signed by the two appraisers.
Thereupon, Brown, having become the sole owner of the-fee, after the first installment of rent succeeding the 5th day of September, 1870, became due, brought his actiou to* annul the appraisement and report made by the two appraisers; to have the leasehold ground valued, as a basis for the annual rent of the second term of twesity years; and to recover the amount of rent then due.
The court set aside the report of the two appraisers,, and referred the case to a master to take testimony and to report the “true value” of the “ground” described in the lease, on the 5th day of September, 1870, together with all the testimony taken by him. A vast amount of testimony was taken, and, after several hearings before the-master, he reported the true value of the ground to be-$47,000. This report, after having been fully heard on exceptions thereto, was confirmed by the court; and that- *466 ¡amount was fixed as the basis of annual rent, at eight per ¡cent, thereon, for the term of twenty years from the 5th day of September, 1870; and a final judgment was entered accordingly. To review the action of that court, leave is now sought to file this petition in error in this court.
This devolves upon us an examination of the record to see if, at least, probable error intervened in the proceedings. The grounds chiefly relied upon for leave to file the petition in error, may be disposed of by considering a few genera] propositions:
1. Did the report, signed by two of the appraisers, conclusively establish the basis of the rent for the second term of twenty years?
,The only power conferred upon the appraisers was expressly specified in the indenture. That instrument does not provide that the appraisement or report may be made by a majority of the appraisers. Nor can such authority be implied from its terms as may be done in cases where two, selected to make an appraisement, are empowered, in ease of a disagreement, to call in a third. Hobson v. McArthur, 16 Peters, 182; Quay v. Westcott, 60 Penn. St. 163. On the contrary, the power conferred in this case is specific. The appraisement and the written report are re•quired to be made “ by three disinterested men.” The case is clearly within the rule, that, where a power or authority is intrusted to several persons to be exercised in relation to' matters of a private nature, as distinguished from those of a public character, all must concur in order to its valid execution. The report, therefore, signed by two of the appraisers only, was of no validity, and was properly so regarded by the court below. Russell on Arbitration, 206; Cope v. Gilbert, 4 Denio, 347; Patterson v. Leavitt, 4 Conn. 50; The State ex rel. v. Wilksville Township, 20 Ohio St. 288.
2. Did the court err in proceeding to determine the •“true value” of the leasehold ground, as a basis of the an: ual rent to be paid during the second term of twenty years under the lease?
The only element wanting, to make the contract between *467 tbe parties complete, was the valuation of the demised ground. The parties attempted to have that done in the manner provided in the indenture. Although the effort proved to be a failure, one of the parties .insisted upon its validity, and refused to make the effort to secure a valuation by a new selection of appraisers in the mode specified in the lease. The other party was therefore compelled to bring his action to set aside the defective appraisement, and to settle in some manner the basis of the agreed percentage of annual rent. The power of the court, after the appraisement was declared to be invalid, to order a reappraisement in the mode provided in the lease, may well be questioned. Eor it is said to be “a well-settled principle of equity jurisprudence, that a court of equity will not enforce the specific performance of an agreement to refer any matter in controversy between adverse parties to arbitrators. Nor will they compel arbitrators to make an award.” Conner v. Drake, 1 Ohio St. 166. It is quite apparent from the record that an appraisement in the mode prescribed in the lease could not have been affected without the exercise of such a power in both respects. But it is clear that the refusal of one party to comply with the covenants of the lease could not defeat the other party in the judicial attainment of his just rights. For this purpose Brown was compelled to bring his action ; and it was entirely proper for the court, once having jurisdiction of the case, to afford an adequate remedy. Nor was the mode pursued by the court objectionable. It was in aeccordance with the practice of courts of equity in like cases, and, doubtless, under the circumstances, the best mode of ascertaining the true’ value of the leasehold, which was the principal matter in the controversjn
8. Did the court err in confirming a valuation of the ground, excluding the improvements thereon? This depends upon the construction of the instrument under which alone the valuation was to be made.
Tne Dayton Hotel Company was incorporated shortly before the lease was made, with power to erect a hotel and *468 purchase or lease “ ground ” for that purpose. Ground was leased, and the annual rent for twenty years was agreed-upon. But contemplating future changes in the value of the ground, the per cent, on such value was agreed upon; but the “true value” of the “ground” was left to be determined at the expiration of each successive term of twenty years. It could not be foreseen what might in the-future affect the value of the ground; nevertheless, whatever might occur, it was stipulated that the “ true value” of the “ ground,” whatever, in fact, it might be at the expiration of each period of twenty years, should be the basis of the annual rent in future years. To arrive at this basis,, appraisers were to “view the ground” and “appraise the same at its true value.” It is clear from this language that the true value contemplated by the covenants of the lease as the basis of the amount of rent, was the fee-simple value of the ground alone, without reference to the purpose for which it was leased, or the character of the improvements thereon. Phila. Lib. Co. v. Beaumont, 39 Penn. 43. The-whole purpose of the indenture was the lease of ground on-the one part, and to secure the payment of ground rent on-the other. The ground leased was, in fact, alone the basis-of the rent; and its true value was to determine the amount to be paid at a fixed per cent, thereon. It was ground that was leased, and ground only was to be appraised. No-matter what might be the improvements on the ground, or the rental value of the premises, still the appraisement was to be confined to the true value of the ground. This is-what was done, and we regard it to be in accordance with-the true construction of the lease. Nor do we think the-party complaining has any good ground for insisting that any evidence was excluded that would aid in arriving at. the true value of the ground. Indeed, it would be strange if nearly seven hundred pages of testimony should fail to-throw all the light on that subject attainable.
This disposes of the principal grounds urged for filing a-, petition in error. It is unnecessary to mention here the other grounds relied on, further than to say, that, upon the- *469 •whole record, we.do not discover any error to the prejudice of the party complaining; and we are satisfied that .further proceedings in error would result only in the affirm.anee of the judgment already rendered.
The motion for leave to file a petition in error will therefore be overruled.